**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 1 6 2023

TAMMY H. DOWNS, CLERK

By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

SARAH PEARSON, for herself
and all other similarly situated individuals                                    PLAINTIFF

v.                                    4:23-cv-1080-BSM

TYSON FOODS, INC.                                                              DEFENDANT

<u>**CLASS ACTION COMPLAINT**</u>

Comes now Plaintiff Sarah Pearson, for herself and all other similarly situated

individuals, by and through her counsel Brian A. Vandiver, a partner in the law firm of Cox,

Sterling, Vandiver & Botteicher, PLLC, and for her Class Action Complaint, states:

**INTRODUCTION**

1.      This is a class action complaint brought under Title VII of the Civil Rights of

1964 ("Title VII") and the Arkansas Civil Rights Act ("ACRA") for failure to accommodate a

religious belief and religious discrimination.

2.      Plaintiff Sarah Pearson resides in Pope County, Arkansas.  She was employed by

Defendant Tyson Foods, Inc. until she was terminated in December 2022.

3.      Defendant Tyson Foods, Inc. is a multi-national corporation with over 120,000

employees with its corporate headquarters in Springdale, Arkansas.

4.      Plaintiff filed an EEOC Charge on March 29, 2022, (see **Exhibit A**) and she

received her right to sue on August 28, 2023 (see **Exhibit B**).

5.      This Court has proper federal question subject matter jurisdiction for Plaintiff's

Title VII claims and proper supplemental subject matter jurisdiction for Plaintiff's ACRA claims.

6.      The Court has proper personal jurisdiction over the parties.

This case assigned to District Judge Miller
and to Magistrate Judge Moore

7.      This Court has proper jurisdiction of the class action claims under Fed. R. Civ. P. 23.

8.      Venue is proper in this Court.

**FACTS**

9.      On August 3, 2021, Tyson announced to all U.S. employees (or "team members") that it would require its U.S. workforce to receive the COVID-19 vaccine.

10.     Tyson later distributed its COVID-19 Vaccination Policy ("COVID Vaccine Mandate") to all U.S. employees.

11.     Pursuant to Tyson's COVID Vaccine Mandate, "as a condition of continuing employment and in the absence of documented and approved reasonable accommodations for sincerely held religious beliefs, practices, or observances, all U.S.-based Tyson team members are required to be fully vaccinated against the COVID-19 virus and to have provided proof of vaccination to Tyson on or before the following deadlines" . . . "(A) September 24, 2021 for all Tyson leadership (officers at or above Grade 93); (B) October 1, 2021 for all team members who work in corporate departments; and (C) November 1, 2021 for all other team members."

12.     Tyson has an Equal Employment Opportunity Policy.

13.     Tyson has EEO procedures and practices specifically relating to reasonable accommodations and the interactive process.

14.     Specifically, with regard to the COVID Vaccine Mandate, Tyson claims "it took steps to ensure the Policy is fair and addresses the needs of its team members."

15.     According to Tyson, Tyson claims that it "provides reasonable accommodations to employees who cannot receive, or object to receiving, the COVID-19 vaccine due to a disability or sincerely held religious belief, practice, or observance."

2

16.     According to Tyson's COVID Vaccine Mandate, "employees seeking a medical or religious accommodation from the [COVID Vaccine Mandate] must submit such requests to their Human Resources Manager."

17.     According to Tyson: "Tyson's receipt of a vaccination accommodation request initiates an ongoing interactive process between the requesting employee and Tyson to evaluate the accommodation request and, if accepted, to consider what type of reasonable accommodation may be available in the specific circumstances presented by the individual employee."

18.     According to Tyson: "As part of this interactive process, Tyson's Human Resources personnel discuss potential reasonable accommodations with the employee that are consistent with its objective of protecting the health and safety of its workforce, including the requesting employee, and of other persons who interact with its employees."

19.     According to Tyson: "Tyson permits telework as a reasonable accommodation if the employee's position can effectively be performed in a remote work environment."

20.     According to Tyson: "If telework is not possible, Tyson Human Resources personnel will explore whether the employee would be qualified for and interested in other open positions at Tyson which could be performed remotely."

21.     According to Tyson: "If neither telework or job transfers are available or are unacceptable to the employee as accommodations, Tyson offers to accommodate the employee through its LOA+ program."

22.     Tyson's LOA+ program placed employees on an extended unpaid leave of absence.

23.     According to Tyson: "Under LOA+, an employee who qualifies for a disability or religious exemption may elect to take a temporary unpaid leave of absence while Tyson continues to explore reasonable return-to-work options that may become available."

24.     According to Tyson: "During this time period, Human Resources will continue to engage in an interactive dialogue with the employee to determine if an avenue exists for returning them to work."

25.     According to Tyson: "Ultimately, the goal of the LOA+ accommodation is to allow a team member to remain connected to Tyson so that the team member may quickly return to work if that option becomes available."

26.     Nonetheless, according to Tyson, "prior to announcing its vaccination mandate, [Tyson] took the additional step of immediately identifying positions that would allow an employee to return to their position without being vaccinated."

27.     According to Tyson: "Based upon that initial analysis, [Tyson] determined that only a few jobs could be performed remotely."

28.     According to Tyson, and before announcing its COVID Vaccine Mandate, "Tyson determined that the only reasonable accommodation for most employees who refused to be vaccinated, regardless of the reason, was a LOA+."

29.     According to Tyson, "this initial analysis occurred before any requests for accommodation were made."

30.     In other words, Tyson had predetermined how it would allegedly "accommodate" employees before announcing its COVID Vaccine Mandate and before receiving any requests for accommodations.

31.    Prior to its COVID Vaccine Mandate, from approximately February 2020 to August 3, 2021, Tyson allowed certain employees, including Plaintiff, to work remotely (aka telework).

32.    Thereafter, some of those employees objected to the taking a COVID-19 vaccine when the vaccines became available, beginning as emergency use authorization (EUA) in December 2020.

33.    Until August 3, 2021, whether vaccinated or not, certain Tyson employees, including Plaintiff were allowed to work remotely (aka telework).

34.    Plaintiff worked for Tyson from November 18, 2002 until she was terminated in December 2022.  Her most recent position was as a Senior Controller, which she accepted in February 2020.

35.    Though Plaintiff resides in Russellville, Arkansas, Plaintiff was based out of Tyson's corporate office in Springdale, Arkansas.

36.    When Plaintiff accepted the Senior Controller job in February 2020, Plaintiff and her manager, Lorrie Bayles, agreed for the job to be telework (remote).

37.    Tyson claims the "job duties of this role include working inside the facilities she supervised in order to collaborate with her direct reports and to understand and identify any issues that needed to be resolved," but in fact several Senior Controllers did not travel and worked remotely.

38.    However, from February 2020 to August 3, 2021, Plaintiff satisfactorily performed her job via working remotely (aka telework) and met all of the essential functions of her job.

39.     From February 2020 to August 3, 3021, according to her job performance reviews, statements from her manager Lorrie Bayles, statements from Tyson CFO Stuart Glendinning, and statements by supervisors and co-workers, Plaintiff was satisfactorily doing her job via telework.

40.     On August 3, 2021, "Tyson announced that it would require its workforce to be fully vaccinated against the COVID-19 virus to report to work for in-person work activities."

41.     Shortly thereafter, President Biden announced his OSHA employer vaccine mandate.

42.     Tyson pointed to President Biden's OSHA employer vaccine mandate in defense of Tyson's COVID Vaccine Mandate.

43.     Soon thereafter, federal courts enjoined the OSHA employer vaccine mandate.

44.     Ultimately, on January 13, 2022, the U.S. Supreme Court declared President Biden's OSHA employer mandate unconstitutional. *See NFIB v. Department of Labor*, 595 U.S. ___ (Jan. 13, 2022).

45.     Yet, Tyson continued enforcing its COVID Vaccine Mandate and related policies and procedures.

46.     On or about August 18, 2021, Plaintiff requested a reasonable accommodation for her religious beliefs.  Plaintiff requested that, because of her sincerely held religious beliefs, she not be forced to take a COVID vaccine and be allowed to continue working remotely (aka telework) as she had satisfactorily been doing since February 2020.  See **Exhibit C**.

47.     Tyson denied Plaintiff's requested accommodation.

48.     Instead, Tyson had predetermined to place Plaintiff (and others) on LOA+, before receiving Plaintiff's religious accommodation request and without any individualized assessment of Plaintiff's current and true essential job functions.

49.     Tyson claims: "Tyson's LOA+, which is temporary and flexible for employees by design, is a reasonable accommodation for employees requesting religious exemptions."

50.     Tyson claims: "When [Plaintiff] requested to remain unvaccinated as an accommodation for her purported religious convictions, [Tyson] granted her request."

51.     Plaintiff contends that Tyson's LOA+ was an unreasonable accommodation that gave Plaintiff a Hobson's choice of taking the vaccine and violating her sincerely held religious beliefs or go on extended indefinite leave without pay.

52.     Instead, Tyson could have granted Plaintiff the reasonable accommodation she requested and allowed Plaintiff to continue working remotely (via telework), which she had satisfactorily been doing with Tyson's approval since February 2020.

53.     Tyson claims: "[Plaintiff] requested an accommodation that would exempt her from the Company's vaccine mandate, based upon her religion, Christian.  After considering the nature of her job duties, which required her to work inside its facilities, offered to place [Plaintiff] on an LOA+," which Tyson also claims Plaintiff accepted.

54.     According to Tyson: "Tyson offered an LOA+ to team members who asked for an exemption from its vaccine mandate and could not perform the essential functions of their role; there were no remote work options; and/or there were no alternative positions available that they could perform within their stated restrictions."

55.     At that time, by offering Plaintiff the LOA+ accommodation (which Plaintiff contends was unreasonable and Tyson contends was reasonable), Tyson agreed that Plaintiff's

religious belief was a sincerely held belief and that Plaintiff was entitled to a religious accommodation.

56.     After August 3, 2021, Plaintiff continued to satisfactorily work remotely (telework) until she was placed on medical leave from August 25, 2021 until October 31, 2021. Thereafter, Tyson formally placed her on LOA+ on November 1, 2021.

57.     On March 1, 2022, the EEOC updated its guidance regarding COVID vaccinations and religious accommodations.

58.     On March 29, 2022, Plaintiff filed her EEOC Charge.

59.     Plaintiff was terminated in December 2022.  Plaintiff was employed by Tyson for over twenty (20) years.

60.     Prior to Plaintiff's EEOC Charge, Tyson never contended that Plaintiff's religious beliefs were not sincerely held.  In fact, by responding to Plaintiff's religious accommodation request and providing Plaintiff with the LOA+ accommodation, Tyson admitted that Plaintiff's religious beliefs were sincerely held.

61.     After Plaintiff filed her EEOC Charge, and while Plaintiff was still on LOA+, Tyson asserted that Plaintiff "must provide proof that her Catholic faith is in some way connected to her decision not to be vaccinated."

62.     Tyson further claims: "[Plaintiff] must also demonstrate conduct that proves the sincerity of her Catholic beliefs."

63.     Plaintiff is not Catholic.  Rather, Plaintiff is a non-denominational Christian.

64.     Further, Tyson claims "the majority of Christian religious [sic] do not oppose COVID-19 vaccinations," citing an article from Vanderbilt Medical Center, and therefore argues Plaintiff is precluding from asserting that her religious beliefs were and are sincerely held.

65.     But Tyson misunderstands Title VII's requirements.  The test is whether Plaintiff's religious beliefs were and are sincerely held, not what other Christians may or may not believe.

66.     Indeed, Christians can and do hold wildly different beliefs about numerous topics and those alternate views can simultaneously be sincerely held religious beliefs.

67.     Per the EEOC: "Generally, under Title VII, an employer should proceed on the assumption that a request for religious accommodation is based on sincerely held religious beliefs, practices, or observances."  See <https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L>.

68.     Still further, Tyson claims that "[Plaintiff] fails to assert any facts suggesting that Tyson treated similarly situated team members outside of her protected class differently."

69.     According to Tyson: "Tyson's vaccination policy applies to all of its team members regardless of their religious affiliation."

70.     Yet again, Tyson misunderstands Title VII's requirements:  When an employee requires an accommodation as an aspect of religious practice, it is no response that the subsequent adverse action was due to an otherwise-neutral policy. "Title VII requires otherwise-neutral policies to give way to the need for an accommodation."  *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015).

71.     In June 2022, Tyson also claimed: "Tyson could not allow Ms. Pearson to continue to work unvaccinated because it would pose an undue hardship by, among other things, threatening the health and safety of [Plaintiff] as well as her co-workers and customers."

72.     Tyson explained: "An employee is entitled to a religious accommodation only if the accommodation does not impose an undue hardship on her or her so-workers or employer, which is interpreted to mean causing anything more than a *de minimis* impact."

73. Yet again, Tyson misunderstands Title VII. The U.S. Supreme Court rejected the de minimis impact theory in *Groff v. DeJoy*, 143 S. Ct. 2279 (2023), and employers who have relied upon the *de minimis* impact theory to deny religious accommodations have relied upon an incorrect interpretation of the law.

74. As the U.S. Supreme Court explained in *Groff*, "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business."

75. Nonetheless and despite Tyson's misunderstanding of Title VII's undue burden defense, in 2022, Tyson again began hiring employees, including corporate employees based in its Springdale, Arkansas headquarters, who were not "fully vaccinated."

76. By February 2022, Tyson was hiring employees with only proof of the first shot and a "promise" to receive the second shot and a mask requirement.

77. Further, Tyson never required any employees to receive vaccine boosters to be considered "fully vaccinated."

78. By early 2022, it was widely accepted and agreed among the scientific community that COVID vaccinations only minimized the impact of COVID on the induvial taking vaccine, but it had little to no effect on preventing transmission of the disease.

79. Yet, Tyson continued to keep Plaintiff (and other employees) on LOA+ while at the same time began hiring new employees who were not fully vaccinated.

80. At all relevant times, Tyson allowed various non-employees, including contractors, venders, customers, and other business partners, to enter their facilities without imposing any vaccine mandate on them.

81. On October 31, 2022, Tyson ended its COVID Vaccine Mandate.

10

82.     Yet, on October 31, 2022, Plaintiff remained on LOA+ and was not rehired.

83.     On October 20, 2022, Plaintiff received a communication from Tyson, directed to another Tyson employee, regarding the possibility of Tyson reinstating employees on LOA+.

84.     Plaintiff emailed Tyson about that possibility on October 27, 2022, but Tyson never responded.

85.     Plaintiff followed-up on November 15, 2022 by calling Tyson.  Thereafter, Plaintiff had discussions with Tyson about the possibility of Plaintiff returning to work.

86.     Tyson did not offer Plaintiff her old job back, but in fact the job offer was significantly different in many ways, including but not limited to requiring Plaintiff to physically report to work in Springdale, Arkansas everyday (thus removing the telework/remote aspect of her original job) and report to a different manager.

87.     Plaintiff declined Tyson's job offer, because it was unreasonable and impossible for her to move Springdale, Arkansas.  Further, Tyson's job offer was discriminatory and retaliatory in response to Plaintiff's religious accommodation request.

88.     Thereafter, Tyson terminated Plaintiff in December 2022.

89.     Tyson claims that it continued to "engage in an interactive dialogue" with Plaintiff (and other employees) while on LOA+.

90.     In fact, Tyson never engaged with Plaintiff in any interactive process after she was placed on LOA+.  Plaintiff's only two contacts with Tyson Human Resources were (A) on February 18, 2022, Plaintiff asked for an update on her forced LOA+ because Tyson had started hiring people who were not fully vaccinated, and Plaintiff received a response on February 22, 2022, and (B) on May 26, 2022, Plaintiff contacted Tyson Human Resources to use accrued

vacation time. All other contacts between Tyson and Plaintiff were merely administrative communications regarding benefits.

91.    By August 2021, the CDC had already concluded that the COVID vaccine could neither prevent a person from acquiring COVID nor prevent transmitting it to others.

92.    Prior to August 3, 2021, Tyson stigmatized non-vaccinated workers by, among other things, giving only vaccinated employees a sticker to place on their Tyson ID badge and forcing only un-vaccinated employees to wear a mask.

93.    Plaintiff (and other employees) were pressured and harassed daily by Tyson's senior leadership about getting the COVID vaccination without any regard to or because of Plaintiff's sincerely held religious beliefs.

94.    Because of Tyson's failure to reasonably accommodate Plaintiff's religious beliefs and Tyson's unlawful religious discrimination, Plaintiff has suffered significant emotional distress.

95.    Tyson acted with malice and reckless indifference and did not attempt to comply with Title VII in good faith, and Plaintiff is entitled to punitive damages.

## COUNT I – FAILURE TO ACCOMMODATE RELIGIOUS BELIEF
### (TITLE VII AND ACRA)

96.    Title VII requires, among other things, employers to provide a reasonable accommodation for an employee's sincerely held religious belief.

97.    Federal courts interpret ACRA in the same way.

98.    Plaintiff was an otherwise qualified employee.

99.    Plaintiff had satisfactorily worked remotely (telework) since February 2020.

100.    Plaintiff made a valid and timely accommodation request, based upon her sincerely held religious belief, to be exempt from Tyson's COVID Vaccine Mandate and continue working remotely (telework) as she had been doing.

101.    The essential functions of Plaintiff's job did not require her to travel on-site or in-person to any Tyson facilities.

102.    Tyson agreed that Plaintiff was entitled to an accommodation based upon her religious beliefs, but denied Plaintiff's request.

103.    Tyson's alternative accommodation of LOA+ (indefinite extended unpaid leave) was unreasonable.

104.    Tyson failed to provide Plaintiff a reasonable accommodation for her religious beliefs.

105.    Plaintiff is entitled to all available legal and equitable relief including but not limited to lost economic damages, future economic damages, compensatory damages, punitive damages, and declaratory and injunctive relief.

## COUNT II – RELIGIOUS DISCRIMINATION (TITLE VII AND ACRA)

106.    Title VII prohibits, among other things, religious discrimination by employers.

107.    Federal courts interpret ACRA in the same way.

108.    Beginning in early 2022, Tyson began hiring new employees who were not fully vaccinated while keeping Plaintiff on LOA+.

109.    On October 31, 2022, Tyson ended its COVID Vaccine Mandate, but kept Plaintiff on LOA+.

110.    Tyson terminated Plaintiff in December 2022.

111.    Plaintiff was an otherwise qualified employee.

112.    Plaintiff was in a protected class because of her religious beliefs.

113.    Tyson treated Plaintiff differently than other similarly situated employees by not requiring them to be vaccinated beginning in early 2022 through Plaintiff's termination in December 2022.

114.    Plaintiff is entitled to all available legal and equitable relief including but not limited to lost economic damages, future economic damages, compensatory damages, punitive damages, and declaratory and injunctive relief.

### COUNT III – CLASS ACTION CLAIM FAILURE TO ACCOMMODATE RELIGIOUS BELIEF (TITLE VII AND ACRA)

115.    Plaintiff asserts a class action claim typical to Count I in the Class Action Complaint for all similarly situated Arkansas based Tyson employees or former Arkansas based Tyson employees pursuant to Fed. R. Civ. P. 23.

116.    The proposed class definition for Count III is:

All Arkansas based Tyson employees or former Arkansas based Tyson employees who worked remotely (telework) prior to August 3, 2021, who requested a religious accommodation to continue working remotely (telework) in response to Tyson's COVID Vaccine Mandate, and who were instead placed on LOA+ by Tyson.

117.    The proposed class is so numerous that joinder of all members is impracticable.

118.    Upon information and belief, the proposed class is in excess of 50 putative class members.

119.    There are questions of law and/or fact common to the class, specifically including but not limited to, whether Tyson's uniform policy to pre-determine employees who would be assigned to LOA+ without properly considering if the putative class members who already worked remotely (telework) when they requested a religious accommodation could continue doing so and then unreasonably denying the putative class members their requested reasonable

accommodation by rubber-stamping a pre-determination to place the putative class members on LOA+.

120.    The claims of the Plaintiff are typical of the claims of the class.

121.    The Plaintiff and her counsel will fairly and adequately protect the interests of the class.

## COUNT IV – CLASS ACTION CLAIM RELIGIOUS DISCRIMINATION (TITLE VII AND ACRA)

122.    Plaintiff asserts a class action claim Typical to Count II in the Class Action Complaint for all similarly situated former Tyson employees pursuant to Fed. R. Civ. P. 23.

123.    The proposed class definition for Count IV is:

All former Arkansas based Tyson employees who were on LOA+ because of a religious accommodation when Tyson ended its COVID Vaccine Mandate on October 31, 2022, and who were subsequently not reinstated to the same job and terminated.

124.    The proposed class is so numerous that joinder of all members is impracticable.

125.    Upon information and belief, the proposed class is in excess of 50 putative class members.

126.    There are questions of law and/or fact common to the class, specifically including but not limited to, whether Tyson's decision to terminate employees who remained on LOA+.

127.    The claims of the Plaintiff are typical of the claims of the class.

128.    Plaintiff and her counsel will fairly and adequately protect the interests of the class.

WHERFORE, Plaintiff prays for a judgment against Tyson Foods, Inc. for herself and all other similarly situated class members and requests:

(a) A jury trial;

15

(b) Economic damages of lost wages and benefits during the LOA+ and after

termination;

(c) In lieu of reinstatement, future economic damages of lost wages and benefits;

(d) Compensatory damages for emotional distress;

(e) Punitive damages;

(f) Declaratory and injunctive relief that Tyson's religious accommodation policies and

practices were illegal under Title VII and ACRA and that Tyson be prohibited from

similar religious accommodation policies and practices in the future; and

(g) All other proper and just legal and equitable relief as may be required.

Respectfully submitted,

Brian A. Vandiver
Cox, Sterling, Vandiver & Botteicher, PLLC
8201 Cantrell Rd., Ste. 230
Little Rock, AR 72227
(501) 954-8073
bavandiver@csmfirm.com

By:     /s/ Brian A. Vandiver
Brian A. Vandiver, Ark. Bar No. 2001078

*Attorney for Plaintiff*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | **493-2022-00470** |
| | | and EEOC |

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Sarah Pearson | (479) 461-0010 | 1975 |

Street Address

1263 Jimmy Lile Road

RUSSELLVILLE, AR 72802

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| TYSON FOODS INC | 201 - 500 Employees | |

Street Address

2200 W DON TYSON PKWY

SPRINGDALE, AR 72762

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| Religion | 11/18/2021 | 03/01/2022 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by the above-named employer on or about November 18, 2002. I work in the position of Senior Controller in the Poultry Division. In the Summer of 2021, my employer notified their employees that we were mandated to take the COVID-19 vaccine or submit a request to be considered for a religious accommodation. I submitted my request for an accommodation based on my religious beliefs, but it was approved. Instead, I was placed on Unpaid Leave Status effective October 31, 2021. Despite the changes in the Federal mandate, I am still on unpaid leave. This email violated my privacy as it included the entire business unit Finance team.I believe I, along with others who have made similar requests, have been and continue to be denied a reasonable accommodation because of our religious beliefs (Christianity) in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Sarah Pearson** **03/29/2022** *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EXHIBIT A

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:**  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.**  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.**  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.**  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

EXHIBIT A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Little Rock Area Office**
820 Louisiana St, Suite 200
Little Rock, AR 72201
(501) 900-6130
Website:  www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/28/2023

**To:** Sarah Pearson
1263 Jimmy Lile Road
RUSSELLVILLE, AR 72802
Charge No: 493-2022-00470

EEOC Representative and email:    RITA BARNES
Enforcement Supervisor
rita.barnes@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 493-2022-00470.

On behalf of the Commission,

Digitally Signed By:Edmond Sims
08/28/2023
Edmond Sims
Acting District Director

EXHIBIT B

**Cc:**
Leigh Anne Yeargan
Tyson Foods
2200 W DON TYSON PKWY LEIGHANNE YEARGAN@TYSON COM
Springdale, AR 72762

Tracy Poyer
Tyson Food
2200 W DON TYSON PKWY
Springdale, AR 72762

Please retain this notice for your records.

EXHIBIT B

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request

EXHIBIT B

Enclosure with EEOC Notice of Closure and Rights (01/22)

identifying your request as a "FOIA Request" for Charge Number 493-2022-00470 to the District Director at Edmond Sims, 200 Jefferson Ave Suite 1400

Memphis, TN 38103.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 493-2022-00470 to the District Director at Edmond Sims, 200 Jefferson Ave Suite 1400

Memphis, TN 38103.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

EXHIBIT B

Sarah Pearson                                                                                          Page 1

## <u>Reasonable Religious Accommodation Request Form</u>

### (To be completed by Team Member)

Date _8/18/2021_____

Name _Sarah Pearson_____    Position/Dept _Sr. Controller/Big Bird Value added finance_____

Supervisor _Lorrie Bayles_____    Shift _1_____

Please specify the religious belief/practice you have for which you are requesting accommodation.

_See below and following page_    _____

_____

What reasonable accommodation are you requesting at this time?

– I request an exemption from the COVID-19 vaccine. If the COVID shots are effective, those people who have
– received them are protected, and it is therefore not an undue hardship for individuals who have religious
– objections to decline such shots, as evidenced by the manner in which Tyson Foods managed both production
– and office facilities through the pre-vaccine period of the 2020's COVID-19 outbreak.

What are some other accommodation options?

– Allow team members to manage their own health affairs.                                         _____

– I will not come to work if ill, including fever.                                               _____

_____

Is this accommodation request a onetime occurrence_____ (dates requested) or
ongoing?_____ (how long/how often; ie-every Sunday)

   Ongoing through mandate end

Are you willing to transfer to another position or department if we are unable to provide a reasonable
accommodation in your current position?

I will consider any options available to not defile my conscience and thus my relationship with God

Religious belief/practice:

I declare the Covid-19 vaccination requirements as set forth by Tyson Foods are contrary to my bona
fide religious beliefs. I have a Christian worldview and belief in the entirety of the Bible. This
perspective recognizes that faith and conscience inform an individual's choices and compel an
individual to submit to the proper jurisdiction within the rule of law, in this case, Divine Law.

   Acts 5:29 But Peter and the other apostles replied, "We must obey God rather than men."

EXHIBIT C

I believe in and follow God and the principles laid out in His Word. I believe my body is a temple for the Holy Spirit. Therefore, I have a deeply held belief that administering the COVID-19 vaccines violate those beliefs. Some highlights from God's Holy Word to help you understand my worldview:

> 1 Corinthians 3:16-17 Don't you know that you yourselves are God's temple and that God's Spirit dwells in your midst? If anyone destroys God's temple, God will destroy that person; for God's temple is sacred, and you together are that temple.

> Romans 8:9 You, however, are controlled not by the flesh, but by the Spirit, if the Spirit of God lives in you. And if anyone does not have the Spirit of Christ, he does not belong to Christ.

> 1 Corinthians 8:7 But not everyone has this knowledge [of Jesus Christ]. Some people are still so accustomed to idols that they eat such food as if it were sacrificed to an idol. And since their conscience is weak, it is defiled.

> 1 Timothy 1:5 The goal of our instruction is the love that comes from a pure heart, a clear conscience, and a sincere faith.

> 1 Timothy 6:9-10 Those who want to be rich, however, fall into temptation and become ensnared by many foolish and harmful desires that plunge them into ruin and destruction. For the love of money is the root of all kinds of evil. By craving it, some have wandered away from the faith and pierced themselves with many sorrows

> Psalm 139:13-14 For You formed my inmost being; You knit me together in my mother's womb. I praise You, for I am fearfully and wonderfully made.

> Psalm 82:3 Defend the cause of the weak and fatherless; uphold the rights of the afflicted and oppressed

Per the CDC, vaccines contain neurotoxins, hazardous substances, attenuated viruses, animal parts, foreign DNA, albumin from human blood, carcinogens and chemical wastes that are proven harmful to the human body. At least 27 vaccines contain cells, cellular debris, protein and DNA from aborted human babies (HEK 293, WI-38, MRC-5) including but not limited to Adenovirus, Polio, Dtap/Polio/ HiB Combo, Hep A, Hep A/Hep B Combo, MMR, MMRV Pro Quad, Rabies, Varicella, Shingles vaccines, Ebola, tuberculosis, malaria and influenza. Not only the additives in vaccines that could be considered contaminants from a biblical standpoint, but the additives themselves are often contaminated. http://www.cdc.gov/vaccines/pubs/pinkbook/downloads/appendices/b/excipient-table-2.pdf. http://www.ncbi.nlm.nih.gov/pubmed/20456974 ). All COVID-19 vaccines that are being distributed are produced and/or tested with cell lines that originated from an aborted human child. It is repugnant that humans would be experimented upon, and that I would receive any perceived benefit from them, according to my deeply held religious beliefs. Additionally, these vaccines differ from standard vaccines by allowance of the synthetic mRNA or DNA code to enter the cells. This level of intrusion into my body's cells is unacceptable as the human body is God's temple. The mandated vaccines, with numerous additives and mechanism for altering my body, is the equivalent of a prohibited "unclean food" that causes harm to my conscience, as warned against in the example of eating food sacrificed to idols. I believe in and follow God and the principles laid out in His Word, and I have a deeply held belief that ingesting these substances violate them and would result in defilement. I would be defiled doubly if motivated by employment/renumeration instead relying on faith in the decision to accept this medical treatment. Defilement would jeopardize my conscience and thus my relationship with God. Therefore, as permitted by law I request an exemption from the COVID-19 vaccine.

EXHIBIT C